## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR ALAN WOLK, ESQUIRE** | : | **NO. 2:09-CV-4001** |
| **Plaintiff** | : | **CIVIL ACTION** |
| **vs.** | : | **JURY TRIAL DEMANDED** |
| **WALTER K. OLSON, ESQUIRE** | | |
| **THEODORE H. FRANK, ESQUIRE** | : | |
| **DAVID M. NIEPORENT, ESQUIRE** | | |
| **THE OVERLAWYERED GROUP** | : | |
| **And OVERLAWYERED.COM** | | |
| | : | |
| **Defendants** | | |

### PLAINTIFF'S MOTION FOR RELIEF FROM THE AUGUST 2, 2010 ORDER
### PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b)(2),(3) AND (6).

Plaintiff, Arthur Alan Wolk, Esquire ("Plaintiff" or "Wolk") respectfully moves this Honorable Court for Relief from the Court's August 2, 2010 Order pursuant to Rules 60(b)(2), (3), and (6) of the Federal Rules of Civil Procedure. The order in question dismissed Plaintiff's defamation lawsuit against Defendants under Federal Rule of Civil Procedure 12(b)(6) upon determining that the case was barred by Pennsylvania' one year statute of limitations governing causes of action for defamation. See 42 Pa.C.S.A. § 5523(1).

This motion for relief from the August 2, 2010 order arises from Plaintiff's recent discovery that the April 8, 2007 defamatory blog in question had been altered, and thereafter republished by defendants on May 13, 2008. Such republication constitutes separate instances of defamation which are independently actionable under Pennsylvania law, even where the original publication is barred and was made by the same defendants. Graham v. Today's Spirit, 468 A.2d 454, 458 (Pa. 1983); See also, Sundance Image Technology, Inc. v. Cone Editions Press, Ltd., No. 02 CV 2258 JM(AJB), 2007 WL 935703 (S.D.Cal. Mar. 7, 2007)(alteration of internet website header constitutes republication for purposes of defamation).

After this Honorable Court entered the August 2, 2010 order, Plaintiff filed a complaint in equity against the defendants and others seeking an injunction compelling the equity defendants to remove all defamatory postings concerning Plaintiff from their internet websites. In connection with the equity lawsuit, Plaintiff hired a forensic internet investigator to evaluate and determine the measures that would be necessary for the equity defendants to cleanse their websites of the defamation.  The results of the forensic analysis were stunning and show that Defendants not only maliciously altered the internet *searchability* of the defamatory blog so extensively to thrust it into the forefront of cyberspace immediately after the one year statute of limitations ran, but they deleted the original web page and created a new web page containing the Frank Blog on May 13, 200*8*.  (See Ex. A, Dec. of DeGraff).  This, of course, means that Plaintiff's action, filed on May 12, 200*9*, was filed ***within*** the applicable one (1) year statute of limitations.

Absent performing a full blown forensic analysis of Defendants' website there was no reasonably possible way for Plaintiff to have known of Defendants' extensive internet stalking and the republication of the defamatory blog.  Defendants' conduct was secret and known only to them and worse, it was concealed from this Honorable Court during the extensive briefing on the Motion to Dismiss which procured the August 2, 2010 order dismissing Plaintiff's case.[1]

Under the provision of Fed.R.Civ.P. 60 providing for relief where new evidence is discovered and the misconduct of an adversary, Plaintiff respectfully requests relief from the August 2, 2010 Order by allowing Plaintiff to amend the original complaint to assert the facts of republication and internet stalking.

---

[1]     It may well have also been concealed from Defendants' Counsel.

The factual and legal basis for the requested relief under Rule 60 is more fully set forth in the accompanying Memorandum of Law and Exhibits attached hereto, all of which are fully incorporated herein by reference.

**WHEREFORE**, Plaintiff respectfully requests the Court to grant this Motion for Relief from the Court's August 2, 2010 Order pursuant to Fed.R.C.P. 60(b)(2), (3) and (6).

Respectfully submitted,

/s/George Bochetto

Dated:  November 30, 2010          By:  _____

George Bochetto, Esquire
David P. Heim, Esquire
**BOCHETTO & LENTZ, P.C.**
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARTHUR ALAN WOLK, ESQUIRE   **:**   NO. 2:09-CV-4001

          **Plaintiff**   **:**   CIVIL ACTION

   **vs.**

                    **:**   JURY TRIAL DEMANDED

WALTER K. OLSON, ESQUIRE
THEODORE H. FRANK, ESQUIRE   **:**
DAVID M. NIEPORENT, ESQUIRE
THE OVERLAWYERED GROUP   **:**
And OVERLAWYERED.COM

                    **:**

      **Defendants**

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR
RELIEF FROM THE AUGUST 2, 2010 ORDER PURSUANT TO FEDERAL RULES OF
<u>CIVIL PROCEDURE 60(b)(2), (3), AND (6).</u>

      Plaintiff, Arthur Alan Wolk, Esquire ("Plaintiff" or "Wolk") respectfully files this

memorandum of law in support of his Motion for Relief from the August 2, 2010 Order, pursuant

to Rules 60(b)(2), (3), and (6) of the Federal Rules of Civil Procedure.

I.   <u>INTRODUCTION</u>

      The results of a recently executed forensic analysis[2] of Defendants' "overlawyered.com"

website brings to light with absolute clarity that Defendants misrepresented and concealed the

actual publication date of the defamatory Blog (hereafter "the Frank Blog"). While the Frank

Blog bears a date of April 8, 2007, the webpage upon which it exists was actually published on

May 13, 2008, in an entirely separate and distinct publication. (Ex. A Dec. of DeGraff ¶ 5-7).

This entirely separate and distinct publication date is within the one year statute of limitations

provided by 42 Pa. C.S.A. § 5523(1) as Plaintiff's cause of action was filed by a Writ of

---

[2] Plaintiff was precluded from conducting any discovery in this matter, and only first had an opportunity to learn of these facts after the Court's dismissal of his case and upon hiring – at great expense – a forensic specialist who could analyze the true antecedents of defendants' internet conduct.

Summons on May 12, 2009. (Ex. B).   The defendants' briefing and representations to this Honorable Court regarding the first publication were false by concealing this crucial fact. (See Motion to Dismiss Dkt. 9 at pg. 5 stating **"[t]he Frank article was published on April 8, 2007**. (Complaint ¶¶ 37-38) Consequently, any claim for defamation or false light Wolk may have had expired in April, 2008.").   The cited paragraphs of the complaint say **nothing** about publication. The alleged date of publication being April 8, 2007 was created solely by the false representations of defendants.

In addition to procuring the August 2, 2010 Dismissal Order by fraud, these Defendants have wildly touted over the internet the Opinion as a rallying cry against Wolk.   In the aftermath of the August 2, 2010 Opinion, Defendants incited a rash of anti-Wolk internet propaganda by claiming Wolk negligently missed a statute of limitations, despite knowing that he did not, implying that Wolk's discovery rule argument was false, linking the original false Frank Blog to numerous new websites, and by further creating websites memorializing the opinion with false commentary.   In fact, Defendants have "search engine optimized" their own website to ensure that virtually any combination of search terms with "Arthur Alan Wolk" on *Google* will produce high ranking results from Overlawyered.com.   Thus, anyone searching for articles about Plaintiff on *Google* will now also receive the defamatory Overlawyered blogs.  (Ex. A, Decl. of DeGraff at ¶ 18-27.)   Moreover, Defendants' affiliated blog site (www.reason.com) have incited its readership to blog about Wolk, calling him a child molester and accusing him of having sex with animals.[3]

---

[3] Plaintiff wishes not to place the evidence of these horrible accusations in the public record, and will submit them to the Court under seal.

**A. Plaintiff's Discovery of Defendants' False Representations and Concealment of the True Publication Date of the Defamatory Blog**

This Honorable Court's August 2, 2010 Order dismissed Plaintiff's Complaint under Rule 12(b)(6), reasoning that the one year statute of limitations precluded any cause of action for defamation based on the publication of the original defamatory blog on April 8, 2007. The true publication date of May 13, 2008, however, was concealed by Defendants, who litigated their motion to dismiss as if the only publication was April 8, 2007, without informing the Court or Plaintiff of this material fact which belied their arguments. (See Dkt. 5 pg. 5 quoted above).

In October of 2010, Plaintiff retained an expert internet website designer and cyberspace forensic analyst to assist him in battling the flurry of assaults against his name and reputation that have post-dated this Court's August 2, 2010 Order, to determine the means necessary to cleanse the internet of the defamation, and to track negative postings concerning Plaintiff on the internet, and in particular, from defendants or incited by their conduct. (Dec. DeGraff ¶ 1-3). Indeed, the Defendants and their cohorts have touted this Court's August 2, 2010 Order as a "victory for bloggers everywhere" and have incited a wrath of fury from a host of irresponsible co-bloggers who have falsely accused Plaintiff of such outrageous and random criminal acts as pedophilia and bestiality. (Ex. C under seal). As Plaintiff is helpless to seek redress for damages incited by Defendants and their cohorts fury of attacks as his remedy at law has been deemed barred by the statute of limitations by this Court's August 2, 2010 order, he contacted several trustees of various non-profit corporations of which defendants are affiliated and by whom defendants are controlled and requested they remove all defamatory postings under their control (Ex. D). Plaintiff's efforts were met with refusal, and a cause of action in equity was filed and is currently

pending before this Honorable Court, having been removed from the state Court of Common Pleas on or about October 29, 2010.[4]

The forensic internet investigation of Defendants' website, initiated to battle the aforementioned host of deplorable conduct levied under the purported protection offered by this Court's August 2, 2010 Order, yielded a startling discovery which proves that Defendants' entire basis for seeking dismissal was false as it concealed crucial information from Plaintiff and this Honorable Court.  In its simplest explanation, the original April 8, 2007 Frank blog, as it was posted on the internet by Overlawyered.com, no longer exists.  The URL for that original April 8, 2007 blog was:

**www.overlawyered.com/2007/04/aurthur_alan_wolk_v_teledyne_in.html**

(Dec. of DeGraff ¶ 6, attaching Ex. C).  That website no longer exists, but rather a new website published on May 13, 2008 exists at:

**www.overlawyered.com/2007/04/arthur-alan-wolk-v-teledyne-industries-inc/**

(Dec. of DeGraff ¶ 5, attaching Ex. B).  This new website was created on May 13, 2008, which is 364 days before Plaintiff instituted this lawsuit on May 12, 2008, and therefore, not subject to the one year statute of limitations upon which Defendants' persuaded this Honorable Court to dismiss Plaintiff's original Complaint.  (Dec. of DeGraff ¶ 5-7, 16.)  Indeed, it was this latter blog upon which Plaintiffs' original Complaint was based. (See Ex B Complaint attaching the latter Frank blog as Ex. A). Plaintiff reminds the Court that his request for pre-complaint discovery was denied and the only date of publication known to him was the date identified on the Frank blog.

---

[4] A Motion to Remand that matter back to state court was filed with this Court on November 29, 2010.

4

The significance of the new May 13, 2008 publication is overwhelming as this new post, not the original April 8, 2007 post, had the necessary hyphens, tags, and URL to be "search engine optimized" so that it was thrust to the forefront of all internet search engine results and infiltrated every search performed of Plaintiff by anyone. (Dec. of DeGraff ¶ 7-16).  This re-posting was an intentional manipulation of the original website and intentional publication of an entirely new website that was "search engine optimized."  (Dec. of DeGraff ¶ 16).  The key words for the April 2007 Frank Blog were ***not*** search engine optimized as they were separated by an underscore "_" as opposed to a hyphen "-", unlike the Current Frank Blog, which uses the search engine optimized hyphen to separate the URL's key words.  (Dec. of DeGraff ¶  8).  Thus, the current Frank Blog contains "search engine optimization" built onto the blog or web page to enhance its presence on the internet and search engine ranking, unlike the April 2007 Frank Blog.  (Dec. of DeGraff ¶ 10).  Because the current Frank Blog uses key words in its URL address -- "arthur-alan-wolk-v-teledyne-industries-inc" – and the key words are separated by hyphens "-" as opposed to underscores "_," the search engine ranking of the blog has been exponentially increased.  (Dec. of DeGraff ¶ 7-8).  When URLs separate key words with an underscore in a format like "word1_word1," (as did the April 2007 Frank Blog), a search engine like *Google* will only return that page if the user searchers for "word1_word1" in that exact order.  (Dec. of DeGraff ¶ 8).  However, using hyphens in the URL in a format like "word1-word1" (as did the new May 13, 2008 Frank Blog) returns searches for either of the words in any order.   (Dec. of DeGraff ¶ 8).

The search engine optimization was an intentional and calculated effort these defendants took at the expiration of the one year statute of limitations which optimized the *searchability* of the Frank Blog and thrust it into the forefront of Google-like search returns.  Before that date, a

user would have to type in the exact words in the exact order to gain the result, but after the

republication of the May 13, 2008 Frank Blog, now *any* combination works.  Thus, Defendants'

representations that "[t]he Frank Article was posted to Overlawyerd.com on April 8, 2007, where

it became instantaneously available to anyone with internet access"  (Dkt. 5 p.9) and

> Given that Wolk has a history of initiating defamation claims, and the fact that a
> simple internet search using Wolk's name instantaneously produces the Frank
> Article, it is inconceivable that Wolk could not reasonably have discovered his
> injury within the limitations period.

(Dkt. 5 p. 11) were utterly false and misleading.  Indeed, at oral argument, suggesting that

concealment of the blog could trigger the discovery rule, defense counsel claimed:

> If there was an allegation in the complaint that somehow Walter Olson and Ted
> Frank had hid this or that it had gone to a select e-mail group to – to get at Arthur
> Alan Wolk – if it went to the aviation attorneys, it – if it went – as apparently it
> did in one of the other defamation cases Mr. Wolk filed – but it went to all
> defense counsel who would face off – but, there – there's no allegation like that.

(6/24/10 Hearing p. 32:4-11).  That is exactly what happened; defendants optimized the search

capability of the blog *after* the one year period expired, but did so by creating an entirely new

web page.

The new URL is an entirely new web page from the original April 2007 blog. (Dec. of

DeGraff ¶ 5-8.)  In fact, the old URL no longer exists on the internet.  A search for the old URL

for the April 2007 blog on an internet browser yields the following result from

Overlawyered.com:

> **Our lawyers probably made us take that down …**
>
> At any rate, we can't find it -- it's a 404 Not Found. Check the spelling of the URL
> carefully, try searching the site for content you know is on the page, or just
> proceed back to Overlawyered.com's top page. And consider telling us about any
> broken links that led you to this page: editor - [at] - this-domain-name - dot - com.

(Ex. E).  The Frank Blog, however, currently exists at the latter URL posted on May 13, 2008. Plaintiff had no idea that the latter URL was created within the one year statute of limitations. Not only was the fact of the new publication unknown to Plaintiff, but the significance of the alteration of the key word tags of the original Frank blog was unknown to Plaintiff until he retained a forensic expert.

The Defendants intentionally posted an entirely new web page as part of a process called "Search Engine Optimization" or "SEO," whereby "tags" and "links" are built onto a particular blog or web page, allowing the website creator to exponentially increase the number of times the original post appears on the internet which enhances the likelihood of a search engine (such as *Google*) ranking the web page higher.    (Dec. of DeGraff ¶ 9).   It is no coincidence that the passing of the one year statute of limitations for Plaintiffs' claim of defamation for the April 8, 2007 blog coincided with a major search engine optimization of the defamatory Frank Blog coupled with its republication on an entirely new internet web page on May 13, 2008. (Dec. of DeGraff ¶ 5-6). This republication was associated with major revisions to the Overlawyered site and the Frank Blog which involved altering the genetic makeup of the site and "URL" addresses of the blogs to greatly enhance the search engine ranking of Overlawyered's site and blogs. (Dec. of DeGraff ¶ 7).

In simple terms, after the one year statute of limitations passed, the Defendants created a brand new web page for the Frank Blog in order to place its defamatory posts at the top of search engine results, when before they were buried in morass of cyberspace.  In order to do this, they published the Frank Blog on an entirely new web page with a different URL and eliminated the old web page.  To draw an analogy, Defendants took the defamatory material from a lesser

circulated publication, and republished it into a mainstream periodical that had much wider circulation.

### B. Defendants Fraud Upon this Court has Fostered Their Continued Malicious Onslaught of Attacks Against Plaintiff.

Wolk never did anything to these Defendants to provoke their wrath against him. Yet these Defendants have singled him out as their public enemy number one and have used their success in this Court as the spring board to launch an entirely new campaign of attacks -- as if this Court's August 2, 2010 legitimized their cause. There is no plausible excuse for these Defendants to have concealed the true publication date of the Frank Blog from this Court. *Plaintiffs' original complaint did not aver the date of publication, but rather only identified the date listed on the Frank Blog*. No discovery was afforded to Plaintiff, and Defendants took full advantage of that absence of information by falsely representing to this Court that the Frank Blog's publication date was April 8, 2007, when the webpage housing the Frank Blog presented in Plaintiff's Complaint was created on May 13, 2008.

The motivation for this fraud runs deep and was calculated not just to win the dismissal of the complaint, but to harm Wolk in a number of additional ways. For example, the exoneration, which these Defendants have claimed through the August 2, 2010 Order, followed with subsequent defamatory publications and Defendants' affiliated blogging sites inciting their subscribers to attack Wolk. Defendants have passed the torch to their affiliates who have spread the message of Defendants' hate mongering and the news of the August 2, 2010 Order. (Ex. F). These affiliates have accused Wolk, a preeminent, nationally recognized attorney, of making a mistake unforgivable even to a first year law student: missing a statute of limitations deadline. (Ex. G). Defendant Ted Frank has also stalked Plaintiff on the internet by spoiling a positive web page on *Wikepedia* documenting Wolk's career. (Ex. A, Dec of DeGraff ¶ 28-36).

Completely new web pages have also been created to memorialize the Court's August 2, 2010 opinion and cast Plaintiff in a false light under the apparent protections of the opinion. (Ex. H wikademia.com).

This Court's August 2, 2010 opinion, which defendants' procured through fraud, has rendered Plaintiff helpless to seek redress for these hateful attacks.  Plaintiff contacted the trustees who are in control of the defendant "think tank" institutions and disclosed the attacks and their falsity.  (Ex. D).  Despite full knowledge of the falsity of the actions of these not for profit corporations and their henchmen, the trustees have refused Wolk's simple request that the false information be removed from the internet.  What was once a blog on a webpage has infiltrated cyberspace through Defendants' stalking to such an extent that its removal may never be an option.  (Dec. of DeGraff  ¶ 27).

Even Defendants' Counsel has created an editorial on their firm's website, claiming a statute of limitations victory without any mention of the true publication date of the false Frank Blog. (Ex. I).  Defense Counsel has also given statements to newspapers about the Court's August 2, 2010 Opinion, touting their victory as well founded in law and fact and ridiculing plaintiff as a lawyer. (Ex. J).

## II.   PLAINTIFF IS ENTITLED TO RELIEF FROM THE AUGUST 2, 2010 ORDER OF DISMISSAL UNDER RULES 60(b)(2), (3), AND (6)

Plaintiff respectfully requests relief from the August 2, 2010 Order which dismissed his case on the basis that the defamatory Frank Blog was actually posted on April 8, 2007, when in fact new evidence has shown that the defamatory Frank Blog was posted on May 13, 2008 on an entirely new website.  Relief is appropriate under the newly discovered evidence provision of Rule 60(b)(2), the misconduct of an opponent provision of Rule 60(b)(3), and the extraordinary circumstances provision of Rule 60(b)(6).

9

**A.     The Evidence Uncovered In a Forensic Internet Analysis of Defendants' Defamatory Blog Justifies Relief under Rule 60(b)(2)**

Rule 60(b)(2) provides in relevant part, that a motion for relief from a judgment or order may be granted based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  F. R. Civ. P. 60(b)(2). A District Court may afford relief under Rule 60(b)(2) when the proceeding at issue was a dispositive motion brought under Rule 12(b).  Payne v. DeLuca, No. CA 02-1927, 2007 WL 1029756 (W.D.Pa. Apr. 2, 2007).

In order to receive relief from a judgment under Rule 60(b)(2), the movant must demonstrate that "(1) the newly discovered evidence [is] of facts that existed at the time of trial or other dispositive proceeding, (2) the [party seeking relief] must have been justifiably ignorant of [the evidence] despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." Lightfoot v. District of Columbia, 555 F.Supp.2d 61, 68 (D.D.C. 2008)(citations omitted); Payne, 2007 WL 1029756 *2; See also Stridiron v. Stridiron, 698 F.2d 204 (3d Cir. 1983).

Here, the evidence uncovered in Plaintiff's forensic internet analysis is entirely new, which uncovered facts that existed at the time of Defendants' motion to dismiss.  The only fact visible to a reader of the Frank blog is its original posting date of April 8, 2007.  The Frank Blog says nothing about when its URL header was changed on May 13, 2008, and only a complex forensic analysis of the website, using software capable of recreating the website as it existed on April 8, 2007, uncovered this fact.  As it pertains to the internet, Plaintiff is a lay person and should not and cannot be charged with the hyper-technical knowledge of a forensic internet investigator.  See Bohus v. Beloff, 950 F.2d 919, 929-30 (3d Cir. 1991)(explaining that a lay

person should not be charged with expert knowledge).  Here, not only was Plaintiff unaware of the fact that the Frank Blog was published on May 13, 2008, but he was unaware of the significance of the alteration.  Moreover, the original Frank Blog published on April 8, 2007, no longer existed as of May 13, 2008 and the original blog could only be uncovered using a website which can travel back in time to see a snapshot of the original blog and its URL.  Furthermore, the opportunity to learn this information, through pre-complaint discovery, was denied to Plaintiff.

Adding to the impossibility of a lay person like Plaintiff to discover the true date of publication without a forensic expert investigation, Defendants through their counsel presented the Rule 12(b)(6) motion to this Court which misrepresented the publication date to the Court and concealed the actual publication date for the web page attached to Plaintiff's Complaint. The lawyers that make up the Overlawyered.com defendants, Frank and Olsen, were duty bound to inform this court that their Rule 12(b)(6) Motion to Dismiss was predicated on false information. They instead played the Motion to Dismiss out as if the effective date was April 8, 2007, when Defendants knew it was not; that plaintiff never saw the publication posted anywhere near that date and that it had tricked the court like the plaintiff into thinking so.

Given the clear prohibition against such conduct, Plaintiff could not have reasonably expected the arguments authorized by Defendants – themselves officers of the Court -- were false. "A lawyer is . . . . an officer of the legal system and a public citizen having special responsibility for the quality of justice" and as part of this "special responsibility" an attorney must comport himself in a manner that ensures fairness and justice to all parties to litigation. Com. v. Lambert, 723 A.2d 684, 691 (Pa. Super. 1998).  The governing ethical rules applied to

the attorney defendants as Rule 8.4 prohibits any attorney from knowingly assisting another to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The evidence of the true publication date of the Frank Blog would have required the denial of Defendants' Rule 12(b)(6) Motion.  Pennsylvania law is clear that the subsequent publication of defamatory material, even by the same defendants, is independently actionable from the original publication. Graham v. Today's Spirit, 468 A.2d 454, 458 (Pa. 1983).  In Graham, the Pennsylvania Supreme Court interpreted the Uniform Single Publication Act[5] and the meaning of the concept of "single publication" where two different magazines, operated by the same publishing company, contained the same defamatory article.  The Supreme Court explained the dispute as follows:

> The parties present diverse definitions of "single publication". The Appellees suggest that "single publication" occurs if identical articles are published notwithstanding that the articles appeared in seemingly different newspapers. Thus, the Appellees contend that there is but one publication since the news articles were identical, regardless of the fact that the articles appeared in separate newspapers. Conversely, the Appellants contend that the newspapers are separate and distinct, requiring that each article be designated as a separate, defamatory communication.

Id. at 457.  Ultimately, the Court held that the plaintiff had two causes of action for defamation as the same defamatory article was published in two different publications:

> Applying these principles to this case in its present posture, it is evident that the Appellants have alleged two separate causes of action. The first tortious act occurred when the defamatory article was published in the *Today's Post* in Montgomery County, while the second tortious act occurred when the defamatory article was published in *Today's Spirit*. It is irrelevant that Montgomery Publishing Company publishes both newspapers, for the tortious act is in the separate communications of the alleged defamatory article. The legal relationship of Montgomery Publishing Company to *Today's Post* and *Today's Spirit* is of no

---

[5] The Act of July 9, 1976, P.L. 586 No 142 § 2 codified at 42 Pa.C.S.A. § 8341.  This Act limits a Plaintiff to one cause of action for a defamatory statement published in a single publication, but distributed on a wide scale basis.  Originally at common law, a plaintiff had a cause of action for each and every publication of a single defamatory statement.

importance in determining whether distinct and separate communications have occurred. Accordingly, the trial court erred in granting the demurrer and dismissing the complaint.

Id. Significantly, the Supreme Court found it irrelevant that the same publishing company published both magazines and the identical defamatory article. Id.

Like the Plaintiff in Graham, Plaintiff here has two causes of action against defendants; one for the April 7, 2007 publication of the Frank Blog on its first website, and a second for the May 13, 2008 separate and distinct publication of the Frank Blog on the second website. As for damages arising from the former publication, that matter is on appeal in light of this Court's August 2, 2010 order. As for the latter publication on May 13, 2008, that cannot be subject to a statute of limitations defense as it is an entirely new publication under the precedent of Graham, and the fact that the same defendants published the same language as before, is of no moment under the same precedent.

Nor may Defendants claim protection from the fact that the new website merely reiterated the same language from the time barred website. For example, courts have allowed defamation claims to arise from the publication of paperback versions of books where the original hard copy is time barred. Rinaldi v. Viking Penguin, Inc., 420 N.E.2d 377 (N.Y. 1981). In Renaldi, the Viking Press published a hard cover book claiming the plaintiff, a retired judge, had catered to mafia bosses. Id. at 378-79. While the plaintiff's cause of action based on the publication of the hard cover was time barred, the subsequent publishing of the book in paperback containing the same language was deemed to be a "new edition" and was not time barred. Id. at 382.

Furthermore, the new URL header for the May 13, 2008 defamatory blog is an entirely new website subject to a brand new statute of limitations calculation; it is essentially a "new

edition" of the original defamation.  In a case applying the single publication rule to a claim of internet defamation, the Southern District of California found that the new website header constituted a new publication.  <u>Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.,</u> No. 02 CV 2258 JM(AJB), 2007 WL 935703 (S.D.Cal. Mar. 7, 2007).  In <u>Sundance Image</u>, the website containing the defamatory material underwent a header change from "Piezography BW" to "Piezography Bwicc" <u>Id.</u> at *7.  The district court found that "[a] rational trier of fact could find that the header change, which was made because Defendants wanted to promote BW ICC and stop promoting its original product … could constitute a new edition of the website since it appears the change was made deliberately and for a substantive purpose…".  <u>Id.</u> at *8.

So too here, the original Frank Blog was deleted and republished for a substantive purpose of making it search engine optimized.  In other words, it was modified to cause more harm to Plaintiff than the original website which was not search engine optimized.  The Frank Blog attached to Plaintiff's complaint was the "new edition" of the original blog which was search engine optimized and capable of causing far more damage than then original.

**B.    The Evidence Uncovered In a Forensic Internet Analysis of Defendants' Defamatory Blog Justifies Relief under Rule 60(b)(3)**

Rule 60(b)(3)'s fraud and misconduct provisions are just as applicable as its provisions for after discovered evidence.  Under this rule, a party is entitled to relief from judgment or dismissal where there has been "fraud …, misrepresentation, or other misconduct of an adverse party." F.R.Civ.P. 60(b)(3).  To prevail, the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case. <u>Stridiorn v. Stridiron</u>, 698 F.2d 204, 207 (3d Cir. 1983).  In <u>Stridiron,</u> the Third Circuit held that the failure to disclose evidence in response to a discovery request was sufficient to justify relief under the rule. <u>Id.</u>

14

The false representations contained in Defendants' Motion to Dismiss were a fraud on Plaintiff and this Honorable Court in blatant violation of the Rules of Professional Conduct 3.3 and 3.4.[6]   Defendants have used this fraud to compound the outrageousness of their conduct and need only the most harsh punishment this court can deliver. At the least, Defendants' deceitful misconduct in misrepresenting the date of publication of the Frank Blog compels the vacating of the August 2, 2010 Order, but of course this Court may also assess costs and fees for their misconduct or order judgment in Plaintiff's favor.

Making misrepresentations of fact is inexcusable.   In <u>Hendon v. Ramsey</u>, 2007 WL 1120375 (S.D. Cal. 2007), the district court condemned the litigants misconduct of arguing an issue and concealing adverse facts and law from the court.   In that case, the defendant argued that the Plaintiff had not exhausted certain remedies and that his complaint should be dismissed. The Court noted, however, that exhibits attached to the complaint showed that the plaintiff had exhausted all remedies.   The Court condemned this misleading argument as follows:

> Based on the second level review appeal memorandum (dated 3/25/05) attached to Plaintiff's complaint and the Ninth Circuit holding in *Brown,* Defendants' argument that Plaintiff did not properly exhaust his administrative remedies not only fails, but is completely misleading. The Court reminds counsel of his duty of candor to the Court, *see e.g.* Cal. Rules Prof. Conduct, Rule 5-200(B) (counsel shall not mislead the court regarding the facts or the law) and ABA Model Rules Prof. Conduct 3.3 (lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction know to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel) and cautions counsel that he may be subject to disciplinary action for violation of these rules.

Id. *10 at n.3 (citations omitted).

The Defendants here cannot truthfully say that they thought Plaintiff was suing for the original April 8, 2007 blog when the exhibit attached to his complaint was the May 13, 2008 blog.   These Defendants had undeniable knowledge that they deleted the original blog and

---

[6] Defendants' conduct may well have also been a fraud on their Counsel.

15

republished it on May 13, 2008.  They had a duty to inform the Court of this information, and by concealing the information, they procured the dismissal of Plaintiff's case by fraud.

### C. The Evidence Uncovered In a Forensic Internet Analysis of Defendants' Defamatory Blog Justifies Relief under Rule 60(b)(6)

The "catch-all provision" of Rule 60(b)(6)"gives [this Court] broad latitude to relieve a party from a judgment for 'any other reason justifying relief from the operation of a judgment' " not specified in the five preceding subsections. Richardson v. Nat'l R.R. Passenger Corp., 49 F.3d 760, 765 (D.C.Cir.1995); Fed.R.Civ.P. 60(b)(6). Relief under Rule 60(b)(6) may therefore be granted in "extraordinary circumstances." Ackermann v. United States, 340 U.S. 193, 199-200, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Extraordinary circumstances may exist "[w]hen a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust ... even though the original failure to present that information was inexcusable." Good Luck Nursing Home, 636 F.2d at 577. Moreover, the moving party must demonstrate that its case is "not the ordinary one" in order to obtain relief under 60(b)(6). Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 903 (D.C.Cir.1996).

The circumstances presented here are unique:  Defendants concealed crucial information about the publication of defamatory publication and procured an order dismissing Plaintiff's case.  The URL of the internet website and the forensic investigation Plaintiff performed are extraordinary measures which uncovered an undetectable secret in the Rule 12(b) Motion practice, which consequently was limited to the pleadings.  Thus, as the motion practice was limited to the pleadings, Defendants concealed the true date of publication known only to them and corrupted the judicial process.  The Defendants' stalking of Plaintiff on the internet has been

both relentless and ruthless. They have now used this Court's August 2, 2010 Order as a shield to incite the most horrific of allegations by co-bloggers.

This case calls for justice. Plaintiff is at the mercy of these internet bullies whose conduct has resulted in the creation of new websites boasting of Defendants' success in front of this Court. (See Ex. H Wikademia.com).  Plaintiff is helpless to stop these assaults, and appeals to this Court's sense of justice to provide relief from an order that was procured by fraud.

## III.    CONCLUSION

Defendants cannot honestly represent that they did not know that the website page attached to Plaintiff's complaint was published on May 13, 2008.  The fact that the defendants did not present a verified Answer attesting to the date of the publication exposes the misleading and false arguments in the motion to dismiss as they touted the date of the Frank Blog as its publication.  Defendants' concealment from this Court of the true date of publication is a fraud and justifies relief under Rule 60.[7]

Plaintiff should have his day in Court against these internet bullies whose malice against him has infected the internet and Plaintiff's good name to such an extent that it may not be able to be undone.  Plaintiff's forty-two year career in aviation litigation has saved countless lives and resulted in technological changes in aviation that would never have been implemented without his efforts.  Plaintiff has single handedly exposed defects in Boeing 737 aircraft that have been subject to design changes to prevent any more than the 1,000 deaths it had already caused. Plaintiff's advocacy has prompted advanced design changes in engine fuel delivery systems and aircraft seat structures.  His career is deserving of praise, not of the heinous accusations the

---

[7]    This Court should also consider – given the institutional nature of the Defendant and the lawyer status of the individual defendants – ordering the parties to engage in fact finding to determine exactly who knew what and when, and who was or was not made aware of the true facts, and when.

Defendants and their blogging cohorts have heaped upon him.  Plaintiff is a father, a grandfather, and is involved in many charitable organizations, and is undeserving of the human indecency levied upon him in this case.

Plaintiff respectfully requests this Court to exercise its fair sense of justice and expose the false arguments these Defendants and their counsel made to procure the August 2, 2010 order and their lack of concern for truth and fairness.  The Defendants themselves are each lawyers and have brought disrepute to their practice and the profession by concealing information from this Honorable Court to procure an order, and then, taking that order and flaunting it everywhere at the expense of Mr. Wolk.

Respectfully submitted,

/s/George Bochetto

Dated:  November 30, 2010                    By:    _____

George Bochetto, Esquire
David P. Heim, Esquire
**BOCHETTO & LENTZ, P.C.**
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
*Attorneys for Plaintiff*

18

## CERTIFICATE OF SERVICE

I, George Bochetto, Esquire, hereby certify that I caused to be served a true and correct copy of the foregoing Plaintiff's Motion for Relief from the August 2, 2010 Order Pursuant to Federal Rules of Civil Procedure 60(b)(2), (3) and (6) upon the following counsel via electronic filing and first-class mail:

Michael N. Onufrak, Esquire
Siobhan K. Cole, Esquire
White & Williams, LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395

Gayle Chatilo Sproul, Esquire
Levine Sullivan & Koch, LLP
2112 Walnut Street, Third Floor
Philadelphia, PA 19103

BOCHETTO & LENTZ, P.C.

/s/George Bochetto
By:_____
George Bochetto, Esquire

Dated: November 30, 2010